LOUIS ROGERS, Appellee, *vs.* THE ST. LOUIS-CARTERVILLE
COAL COMPANY, Appellant.

*Opinion filed April 18, 1912.*

1. MINES—*when plaintiff cannot recover unless his case falls within the Mines and Miners act.* A workman employed by a coal mining company, who is injured as the result of his own negligence and forgetfulness in leaving a heavy timber in such a position that it subsequently fell upon and injured him, cannot recover damages from the company unless the case falls within the provisions of the Mines and Miners act permitting a recovery for a willful violation thereof notwithstanding plaintiff's negligence.

2. SAME—*a carpenter employed on outside work at mine is not within protection of Mines and Miners act.* A carpenter employed by a coal mining company to erect and repair buildings outside of the mine and repair cars is not an operative miner within the meaning of the Mines and Miners act, even as that act existed before its amendment in 1911, and the provisions of such act requiring the inspection of working places and the marking of dangerous conditions do not apply to structures outside of the mine, upon which he is employed. (*Spring Valley Coal Co.* v. *Greig,* 226 Ill. 511, distinguished.)

3. CONSTITUTIONAL LAW—*right of legislature to classify persons for purpose of legislation.* The legislature may classify persons for the purpose of legislation, provided the classification is not arbitrarily made and is based upon some difference which bears a just and proper relation to the classification.

4. SAME—*mandate of the constitution applies only to operative miners.* Operative coal miners are exposed by their occupation to extraordinary hazards and perils to which other laborers are not exposed, and the constitution itself expressly requires the passage of laws to provide for their health and safety; but the mandate of the constitution applies only to operative coal miners, and not to men employed by a coal mining company who are not exposed to any dangers or perils peculiar to the mining business.

5. SAME—*when constitutional question is not involved in former decision.* A decision by the Supreme Court in a case coming by appeal from the Appellate Court cannot involve any constitutional question, as such question would be waived by the taking of the appeal to the Appellate Court and the submission of the case to that court for decision upon errors assigned which it had power to hear and determine.

6. Same—*the Mines and Miners act cannot be construed to include a carpenter employed on outside work.* The situation of a carpenter working on outside buildings of a mining company is not different from that of carpenters employed upon buildings not owned by coal companies, and to so construe the Mines and Miners act as to make it apply to a carpenter in such a situation would bring it in conflict with the constitution.

7. Same—*if construction of statute is doubtful, courts should adopt the construction which will not render the act void.* If a statute is susceptible of two constructions, one of which will sustain its validity and the other render it in conflict with the constitution, the courts should adopt the construction which will uphold the validity of the act.

Appeal from the Circuit Court of Williamson county; the Hon. William W. Clemens, Judge, presiding.

Denison & Spiller, (Mastin & Sherlock, of counsel,) for appellant.

Neely, Gallimore, Cook & Potter, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

On September 15, 1910, the appellee, Louis Rogers, was working as a carpenter for the appellant, the St. Louis-Carterville Coal Company, on the buildings at its mine in Williamson county. His leg was broken by the fall of a piece of wood, four by four inches in thickness and about ten feet in length, from a platform on the tipple where the appellee had left it unfastened, and he brought this suit in the circuit court of said county for the consequent damage. His cause of action was founded on an alleged willful failure to comply with the provisions of the act concerning mines and mining then in force, requiring mine examiners to inspect working places of the miners and to place a conspicuous mark wherever dangerous conditions existed. (Laws of 1899, p. 300.) In the various counts of his declaration he charged the defendant with willfully permit-

ting him to enter his working place and work therein while the same was unsafe and dangerous, willfully failing to place a conspicuous mark at his working place, willfully failing to examine the tipple and place a conspicuous mark thereat, and willfully failing to have danger signals displayed where he was working, so that he might be warned of existing danger. The plea was not guilty, and upon a trial the plaintiff recovered a verdict for $1900, upon which the court, after overruling a motion for a new trial, entered judgment. An appeal was prayed to this court and allowed on the ground that a constitutional question was involved.

At the conclusion of the evidence the defendant requested the court to direct a verdict of not guilty, and in its written motion alleged, as matters of law, that section 18 of the Mining act did not apply to the condition outside of the mine alleged to have existed; that the plaintiff was not an operative miner engaged in any department of the mining of coal, and that if sections 16 and 18 of the Mining act were construed as applying to the condition of the tipple and piece of wood and to the plaintiff as a carpenter, they were unconstitutional and void as subjecting the defendant to burdens and liabilities not imposed upon other employers of carpenters in similar work, and conferring benefits and advantages on persons employed as ordinary carpenters by coal companies outside of their mines when the same benefits and advantages were not given to persons engaged in similar employment under like conditions. The court refused to give the instruction tendered, and at the instance of the plaintiff gave nineteen instructions construing the Mining act as applicable to the conditions existing as shown by the evidence, and authorizing a recovery by virtue of the Mining act for the injuries sustained.

The undisputed facts as proved by the plaintiff were as follows: The defendant owned a mine at which there was

a frame structure, called a "tipple," extending about seventy feet above the ground. Adjoining the tipple a short distance from the mining shaft there was a frame elevator shaft five or six feet square in which there was a system of buckets, operated by a separate engine near the top of the shaft, for the purpose of elevating coal. The mine had not been operated for about five months before the accident, and the defendant was having the elevator shaft repaired and enlarged for the purpose of again operating the mine. The plaintiff was a carpenter, who had been employed by the defendant about a year in doing carpenter work about the buildings and at odd times repairing cars. He had a helper, Clyde Cox, and was sometimes assisted by Thurman Stutsman. There was a platform on the tipple about sixty feet above the ground, and the plaintiff was directed to fasten a stick of timber on it to lean a ladder against. The piece of wood which fell was taken up to the platform by the plaintiff, with Cox and Stutsman, and holes were bored in it to fasten it to the platform, but they found they had no bolts long enough to fasten it and left the timber lying on the platform, with one end projecting over about two feet. They then went to work on the elevator shaft about fifteen feet below the place where the plaintiff left the timber, to make a chute that would catch the coal from the revolving bucket chain. The plaintiff was at that work, according to his recollection, two, three or four days, and was told that when he finished it he should start the engine and see if everything worked all right. He had forgotten that he left the piece of wood loose on the platform, and after completing the work on the elevator shaft he started the engine, which jarred the tipple so as to shake the timber off the platform, and it fell on him and broke his leg. The piece of wood would not have fallen but for the jar of the machinery, which moved it from the place it was left several hours after the time for the daily examination in the morning, when there was no existing danger.

The plaintiff placed the timber where it was, with one end projecting over the end of the platform and unfastened, and if a dangerous condition existed it was created by him, so that he could only recover for the willful violation of the Mining act exempting him from what would otherwise have been a valid defense to his action. The sole reliance of his counsel to sustain the refusal to direct a verdict, and the instructions applying the statute to the facts and giving him its protection, is the decision of this court in the case of *Spring Valley Coal Co.* v. *Greig,* 226 Ill. 511, where the Mining act then in force was construed as requiring examination, inspection and marking of machinery and other appliances used in the actual operation of mining coal and in removing coal and other material from the top of the mine so as to keep the top in proper condition, including a stationary engine used to haul coal to the retail dump and bring back empty cars by means of cables. That construction was given to the act on account of the definition of a mine in section 34 and the requirement of paragraph *d* in section 16 making it the duty of the mine manager to see that all places, both above and below, were properly marked and that danger signals were displayed wherever they were required. In the revision of the Mining act soon after that decision, the General Assembly made its intention explicit by limiting the duty of the mine examiner to examination of the underground workings of the mine. (Laws of 1911, p. 388.) But the decision has no relevancy to the facts of this case, and the material question here was not and could not have been considered in that case. James Greig was operating an engine in getting coal away from the top of the mine, and there was room for saying that by a liberal construction he was an operative miner within the meaning of the constitution, but the plaintiff, who was engaged in erecting and repairing buildings and repairing cars, could not by any stretch of language be regarded as an operative coal miner. His occupation was that of a carpenter, and

his situation was not different from that of any other carpenter engaged in similar work for employers who did not own coal mines. The appeal in that case was from the Appellate Court, and if a case is submitted to the Appellate Court for determination upon errors assigned which that court may properly consider, it is a waiver or abandonment of any error which can be reviewed only by this court. By taking an appeal to the Appellate Court and assigning errors as to matters which that court had jurisdiction to hear and determine, the Spring Valley Coal Company waived every question which that court had no right to consider and could not urge any such question in this court on a further appeal. (*Indiana Millers' Mutual Fire Ins. Co.* v. *People,* 170 Ill. 474; *Case* v. *City of Sullivan,* 222 id. 56; *Town of Scott* v. *Artman,* 237 id. 394.) The Appellate Court might determine the intention of the General Assembly from the language used in the act, but could not decide whether a particular construction would bring the act into conflict with the constitution. If that was claimed, the only manner in which it could be determined would be by a direct appeal to this court. Here it is contended that a construction of the statute which would extend the duty of examining and marking dangerous places on the tipple and buildings and structures above ground for the protection of carpenters in no way connected with the actual operation of a mine would render the statute unconstitutional, as imposing burdens and conferring benefits upon particular classes where there is no reasonable ground for the classification and no reason for singling out one class as a special subject for discriminating legislation.

The General Assembly may classify persons for the purpose of legislation, provided the classification is not arbitrarily made and is based upon some difference which bears a just and proper relation to the classification. Operative coal miners are placed in a class by themselves by the constitution itself, and the validity of laws enacted to provide

for their health and safety is not and cannot be disputed. They are exposed by their occupation to extraordinary hazards and perils to which other laborers are not exposed, and the mandatory provision found in section 29 of article 4 of the constitution requires the General Assembly to give them special legislative protection against such hazards and perils. (*Kellyville Coal Co.* v. *Strine*, 217 Ill. 516; *Cook* v. *Big Muddy Mining Co.* 249 id. 41.) The provision of the constitution is, that the General Assembly shall pass such laws as may be necessary for the protection of operative miners, who constitute a class for the purpose of legislation, and the mandate to the General Assembly applies only to them. The plaintiff was not an operative miner and was not exposed to any dangers or perils peculiar to the mining business, and did not possess any disability, attribute or qualification to mark him, or persons of his trade, as special objects of legislation. The situation of carpenters working on buildings owned by a coal company is not different in any respect from that of carpenters working on buildings or elevators not owned by coal companies and used for handling grain or any other product. To construe the statute as applying to the situation shown by the proof would bring it in direct conflict with the constitution. (*Harding* v. *People,* 160 Ill. 459; *Gillespie* v. *People,* 188 id. 176; *Horwich* v. *Walker-Gordon Laboratory Co.* 205 id. 497; *Starne* v. *People,* 222 id. 189; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302.) As a matter of fact, if the examination had been made there was no evidence tending to show that the condition was at all dangerous at the time the examination would have been made, or that there was any reason to anticipate that the piece of wood ten feet long, extending only two feet beyond the platform, would fall. But we do not regard the statute as including in its terms the tipple where the plaintiff left the timber, or the plaintiff himself, who was not an operative coal miner, and if the question had been doubtful it would

have been the duty of the court to construe the statute so as to sustain its validity rather than to give it a construction that would render it void. *Hogan* v. *Akin,* 181 Ill. 448.

The court erred in construing the statute and refusing to direct a verdict of not guilty, and the judgment is reversed and the cause is remanded.    *Reversed and remanded.*