only evidence to support the charge was the deposition of a common prostitute in another city, which deposition she was induced to make at the direction of a man, as to whom, she said, "I do everything he tells me to," it appearing she was a confessed victim of the cocaine habit, and the record of her testimony disclosing that while under examination before the commissioner she suffered a mental and nervous collapse for lack of the drug.

---

**William L. Newman, Administrator, Appellee, v. Barber Asphalt Paving Company, Appellant.**

**Gen. No. 19,406.     (Not to be reported in full.)**

Appeal from the Circuit Court of Cook county; the Hon. CHARLES H. BOWLES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed with finding of fact. Opinion filed December 31, 1914. Rehearing denied January 20, 1915.

### Statement of the Case.

Action by William L. Newman, administrator of the estate of James Vernon Meek, deceased, against the Barber Asphalt Paving Company, a corporation, to recover damages for wrongfully causing the death of plaintiff's intestate, who was a boy six years of age. The plaintiff had verdict and judgment for thirty-seven hundred and fifty dollars. To reverse the judgment, defendant appeals.

On July 21, 1909, and for about two weeks prior thereto, appellant was engaged in paving Jackson boulevard near the intersection of Lincoln street, or in repairing the pavement there. The asphalt was hauled to the job in dump wagons drawn by horses, and was not unloaded until it was required to be spread upon the pavement. About ten o'clock in the forenoon of the day named, several wagonloads of asphalt were hauled to the place where the work was in prog-

ress, and as the pavers were not then ready to spread all of the asphalt so then hauled, the drivers of the several wagons were directed to stop their teams and wait until called upon to dump their loads. Mooney, one of the drivers, stopped his team on the east side of Lincoln street, about seventy-five to one hundred feet south of Jackson boulevard, so that his wagon stood about three feet from the curb. The horses were headed north and remained hitched to the wagon. Mooney got off his wagon and went to or near the southwest corner of the streets named, near which point other employees of appellant were then at work, and where other drivers had congregated, to await directions from the foreman, Luke, when and where to drive his team and unload his wagon. During the forenoon, after the wagon in question had stopped on Lincoln street, and while it was standing there, several boys, who lived in the immediate neighborhood, including the deceased, were playing on the east side of the wagon, sitting on the curb engaged in pulling out asphalt, or tar as they called it, with sticks or with their hands, from openings in the bed of the wagon and rolliing it into balls. When the noon hour arrived, Mooney, who was then standing in the street, ten or fifteen feet from his team, was told by Luke to feed his team, as his wagon would not be unloaded until after dinner. As Mooney advanced towards his team, or while he took hold of his horses' heads for the purpose of leading them up, they moved forward two or three feet, and the right rear wheel of the wagon ran over the body of the deceased, causing injuries which resulted in his death.

CALHOUN, LYFORD & SHEEAN, for appellant; EDWARD W. RAWLINS, of counsel.

A. W. FULTON, for appellee; ROBERT S. COOK, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

## Abstract of the Decision.

1. NEGLIGENCE, § 58*—*when failure to fasten team and wagon left standing on street not proximate cause of injury to child.* Failure of the driver of a team and wagon to fasten the horses when standing upon a public street, *held* not to be the proximate cause of the death of a child by being run over by a wheel of the wagon, where the evidence shows the horses did not move a greater distance than they might have moved if they had been fastened, as horses are ordinarily fastened, when standing upon a street.

2. NEGLIGENCE, § 19*—*extent of doctrine of attractive nuisance.* The doctrine of "attractive nuisances" has not been extended to a team and wagon or other like vehicle standing or moving upon a street.

3. NEGLIGENCE, § 16*—*when presence of team and wagon on street does not constitute.* Negligence cannot be predicated upon the mere presence upon a street of a team and wagon either stationary or in motion.

4. NEGLIGENCE, § 16*—*when driver leaving team and wagon on street not guilty of negligence.* A driver of a team and wagon left standing upon a street, *held* not guilty of negligence where a child of tender years was run over by a wheel of the wagon when the team started up, it appearing that the driver did not know or had no reason to believe that the child was in a position of danger where he might be injured if the team started forward.

## Antonie Pospisil, Defendant in Error, v. Frank G. Hajicek, Plaintiff in Error.

### Gen. No. 19,164. (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed December 31, 1914.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.