EILEEN M. CARATINI, as Adm'r of the Estate of John M. Caratini, Jr., Deceased, Plaintiff-Appellant, v. CASUALTY INSURANCE COMPANY, Defendant-Appellee.

First District (3rd Division) No. 1—90—3636

Opinion filed April 14, 1993.—Rehearing denied June 15, 1993.

GREIMAN, J., dissenting on denial of rehearing.

David H. Lucas, of Lucas, Murphy & Kerwin, and Robert J. Kennedy, of Huff & Kennedy, both of Chicago, for appellant.

Kiesler & Berman, of Chicago (Robert L. Kiesler, Marvin D. Berman, and Jeanne M. Zeiger, of counsel), for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Plaintiff Eileen Caratini, as administrator of the estate of decedent John M. Caratini, appeals from an order of the circuit court of Cook County dismissing her declaratory judgment action against defendant Casualty Insurance Company pursuant to its finding that defendant made an offer of uninsured motorist coverage to plaintiff's decedent as required by section 143a—2 of the Illinois Insurance Code (section 143a—2) (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2). On appeal, plaintiff contends that the trial court erred in finding that defendant offered plaintiff's decedent uninsured motorist insurance in a manner which satisfied the requisites of section 143a—2. We reverse and remand.

In December 1985, decedent contacted the Marvin Schoen Insurance Agency in Glen Ellyn, Illinois, in reference to obtaining workers' compensation and motor vehicle liability insurance for his trucking company. On December 6, 1985, decedent met with Marvin Schoen at the agency to discuss the trucking company's insurance needs. At this meeting, decedent brought in a list of his vehicles and requested

bodily injury coverage with a limit of $500,000. During the meeting, uninsured motorist coverage was mentioned and Schoen telephoned Steve Kelley, an underwriter for defendant, regarding the cost of such coverage with a $500,000 limit. Kelley quoted Schoen a figure of $50 per vehicle for the uninsured motorist coverage. However, Kelley stated that he was unsure as to whether defendant would write $500,000 of uninsured motorist coverage. Kelley incorrectly believed the top amount of such coverage defendant would write was $300,000.

Schoen then relayed Kelley's quote to decedent and Schoen's belief that between the proposed regular liability and workers' compensation insurance decedent would be fully covered. When told the uninsured motorist coverage would cost $50 per vehicle, decedent responded, "I cannot afford it—the premium's too high already." Responding to decedent's concern over cost, Schoen erroneously stated that the basic uninsured motorist insurance of $15,000 per person and $30,000 per accident (15/30), which cost $4 per vehicle, could be waived by writing a letter to defendant to the effect that such coverage is not desired. Decedent indicated that it was not worth the trouble of writing a letter over $4.

Subsequently, an application for insurance on behalf of decedent was completed by Schoen's secretary, Eileen Tarsa. Tarsa signed decedent's name to the application. The application had requested the basic 15/30 uninsured motorist coverage. Pursuant to this application, defendant issued policy number GAL—86 29118, effective January 21, 1986. The policy had a single coverage limit of $500,000 for bodily injury coverage and did not mention the uninsured motorist insurance. Subsequent to the effective date of the policy, decedent was fatally injured in a motor vehicle collision alleged to have been caused by the negligence of an uninsured driver. Uninsured motorist coverage was added by defendant to the policy by endorsement on July 28, 1986, after decedent's death.

■ We now turn to plaintiff's argument that the trial court erred in finding that defendant offered plaintiff's decedent uninsured motorist insurance in a manner which satisfied the requisites of section 143a—2. Section 143a—2 provides, in pertinent part, as follows:

> "(1) Required offer of additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle registered or

principally garaged in this State unless uninsured motorist coverage as required in Section 143a of this Act is offered in an amount up to the insured's bodily injury liability limits." (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(1).)

Thus, the question in this case becomes whether defendant "offered" uninsured motorist coverage to decedent within the meaning of section 143a—2. Defendant asserts that Schoen, as its agent, fulfilled the requisites of section 143a—2. Plaintiff argues that Schoen was not an agent of defendant and thus could not have made the required offer of uninsured motorist coverage and that even if one assumes, *arguendo*, that Schoen was defendant's agent, he still did not make an offer within the meaning of section 143a—2. We agree with plaintiff's argument that Schoen's actions were inadequate under section 143a—2 and, therefore, we need not decide whether he was an agent of defendant and make no comment on that issue.

■ In the case of *Cloninger v. National General Insurance Co.* (1984), 109 Ill. 2d 419, 488 N.E.2d 548, our supreme court gave its imprimatur to the appellate court's holding in *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 456 N.E.2d 956. *Tucker* adopted a four-part test employed by the Minnesota Supreme Court in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, to determine under a similar provision of Minnesota law requiring insurers to offer optional coverages, including uninsured motorist insurance, whether an offer of such coverage was made. *Tucker* summarized the *Hastings* test which insurers must meet in order to comply with section 143a—2 as follows:

"([1]) If the offer is made in other than face to face negotiations, the notification process must be commercially reasonable; (2) the insurer must specify the limits of its optional coverages and not merely offer them in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverages; and (4) the insured must be advised that optional coverages are available for a relatively modest increase in premium." *Tucker*, 125 Ill. App. 3d at 335.

■ Upon a careful review of all the circumstances of this case, we conclude that none of the *Tucker-Hastings* factors were met. By no stretch of the imagination can it be said that the notification process was commercially reasonable. At the time of decedent's meeting with Schoen, Schoen and Kelley had only a vague idea of how much the premium for the uninsured motorist coverage would cost. Neither Schoen nor Kelley knew what the limits of such coverage could be or what the requirements of section 143a—2 were. Consequently, it was

impossible for them to intelligently advise decedent of the nature of the optional coverage and its availability at a relatively modest increase in premium. Therefore, we find that defendant's offer of uninsured motorist coverage was insufficient under the requirements of section 143a—2. We further find that the insurance policy at issue in this case by operation of law implies uninsured motorist coverage in limits equal to the bodily injury limits.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RIZZI and GREIMAN, JJ., concur.

## DISSENT UPON DENIAL OF REHEARING

JUSTICE GREIMAN, dissenting:

Although I believed that the case was a close one at the time I concurred with the majority's opinion, upon consideration of the meaningful petition for rehearing, I have determined that this court should have affirmed the trial court.

This appeal comes to us following a bench trial where the trial court entered a detailed order including its findings of fact and conclusions of law. It is well established that a trial court's findings in a bench trial will not be disturbed unless they are against the manifest weight of the evidence which requires the opposite conclusion to be clearly evident. *Holland v. State Farm Mutual Automobile Insurance Co.* (1991), 216 Ill. App. 3d 463, 468, 576 N.E.2d 981; *Trident Industrial Products Corp. v. American National Bank & Trust Co., N.A.* (1986), 149 Ill. App. 3d 857, 865, 501 N.E.2d 273.

The trial court concluded that defendant satisfied the requirements of section 143a—2 (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2) and the four-part test enunciated in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425-26, 488 N.E.2d 548, and *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956.

The first prong of the test only applies where the offer is made in other than face-to-face negotiations. In the present case, the negotiations at issue took place in the context of a face-to-face meeting between Caratini and Marvin Schoen and as such are sufficient to forego the element addressing the commercially reasonable nature of

the notification process. (*Holland*, 216 Ill. App. 3d at 467 ("the first criterion has been met by the meeting between plaintiff and defendant's agent); *Houser v. State Farm Insurance Co.* (1989), 193 Ill. App. 3d 125, 549 N.E.2d 17 (where an offer of insurance was made by mail, the court considered whether the notification process was commercially reasonable).) Accordingly, I disagree with the majority's statement that "[b]y no stretch of the imagination can it be said that the notification process was commercially reasonable." 248 Ill. App. 3d at 73.

The evidence in the record also supports the trial court's conclusion that the three remaining elements of the *Tucker* test were satisfied. As acknowledged by the majority, Schoen ascertained the exact premium for increased uninsured motorist coverage in a telephone conversation with Steve Kelley and then quoted a figure of $50 per vehicle for the uninsured motorist coverage to Caratini. An offer for optional coverage need not include a listing of all available coverages and their respective costs. (*Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 554-55, 515 N.E.2d 1304.) In response to this information, Caratini rejected the increased coverage and stated "I cannot afford it—the premium's too high already."

Schoen also explained to Caratini the differences between uninsured motorist coverage, underinsured motorist coverage, and worker's compensation coverage as to damages recoverable. Schoen further advised Caratini that the basic uninsured motorist coverage of $15,000 per person and $30,000 per occurrence would cost $4 per vehicle. Schoen erroneously told Caratini that the basic coverage could be waived by writing a letter to that effect, but Caratini dismissed this idea by saying that it was not worth the trouble of writing a letter. The erroneous information regarding the waiver of the minimum coverage conveyed by Schoen impacts little, if at all, on the fact that Schoen explained and offered the optional coverages to Caratini.

In a bench trial, the trial court determines the weight and credibility of the witnesses' testimony and resolves inconsistencies and conflicts. (*Holland*, 216 Ill. App. 3d at 467-68.) A reviewing court will affirm if there is evidence in the record to support the trial court's judgment because it is not sufficient to show that the record will support a contrary decision. *Trident Industrial Products*, 149 Ill. App. 3d at 865.

Accordingly, I would affirm the trial court's judgment.